State ex rel. Board of Ed. v. Wayne County Court.

THE STATE *ex rel.* BOARD OF EDUCATION, *Appellant*, v. THE COUNTY COURT OF WAYNE COUNTY *et al.*

1. **Swamp Lands:** SALE OF BY COUNTY COURT: RECLAMATION. Lands granted to this state by the act of congress of September 28, 1850, the proceeds of which were, by the terms of the act, to be applied exclusively, as far as necessary, to reclaiming them, the title to them being subsequently vested in the counties by the state upon condition that the net proceeds of their sale, after defraying expenses of reclaiming, etc., should become a part of the public school fund of the county, may be sold by the county court, in consideration of their reclamation by the purchaser and that the surplus remaining after necessary expenses of reclamation have been paid shall go to the school fund of the county.

2. ——: ——: ——. A contract for the sale of such lands, made by the county court in good faith, is valid, although the price agreed to be paid is the minimum allowed by law, the whole of which is to be expended in the reclamation of the land.

3. **Offices and Officers:** PRESUMPTION. In the absence of evidence to the contrary, it will be assumed that public officers have proceeded in obedience to, not in disregard of, their duties and obligations as such.

*Appeal from Wayne Circuit Court.*—HON. JOHN G. WEAR, Judge.

AFFIRMED.

*C. D. Yancey* for appellant.

(1) The lands embraced in the contention here were granted by the United States to this state by act of congress. 9 U. S. Stat. At Large, p. 519. The trust, thus created, is a personal trust reposed in the public faith of the state, and is not a property trust fastened by the terms of the grant upon the land itself. *Dunklin County v. District Court*, 23 Mo. 449. Therefore, the

*proviso* in section two of the act refered to: "That the proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied, exclusively, as far as necessary, to the purpose of reclaiming said lands by means of levees and drains aforesaid," did not inhibit the appropriation, otherwise, of either the lands, as the law-making power of the state might, in its wisdom, provide and determine. The lands in controversy here, having been granted by the United States to the state of Missouri, and by the state of Missouri to the county of Wayne, remained undisposed of at the time of the adoption of the constitution of Missouri of 1875; and, not being "otherwise appropriated by the United States or by this state," remained subject to such disposition or appropriation as the law-making power of the state might deem fit and appropriate. 23 Mo. 449. But the county, under the grants from the state, received the title to such lands coupled with a trust, and possessed no power to dispose of or to appropriate the same other than is clearly and expressly derived from the state,—in other words, the county court, with respect to such lands, is a mere trustee of an express trust, with naked power. *Barton County v. Walser,* 47 Mo. 189; *Ray county to use v. Bently,* 49 Mo. 236; *Sturgeon v. Hampton,* 88 Mo. 203. (2) The "proceeds" of all such lands were specifically appropriated—these lands, particularly, not having been "otherwise appropriated" prior thereto by "this state or the United States," by the constitution, 1875 (sec. 6, art 11), thereafter such "proceeds" were required to be "paid into the state treasury and securely invested and sacredly preserved as a public school fund." This contract amounted to nothing more, nothing less, than an "appropriation or donation" by Wayne county "to, or in aid of a railroad corporation," without the sanction of the people prior to the adoption of the constitution of 1875, or at any time, and in reckless disregard of the provisions of that instrument as well as of the rights of the people. Sec. 6,

art. 9, Const. 1875. (3) The state having specifically pointed out the manner and method by which the county might dispose of these lands ( R. S. 1879, sec. 6153), it became essential to conform to the law in order to give validity to the acts of public officers concerning such sales. *State v. Bank*, 45 Mo. 528 ; *Hutchinson v. Cassidy*, 46 Mo. 432 ; *Saline County v. Wilson*, 61 Mo. 237.

*M. Whybark, William Carter* and *Wilson & Whitelaw* for respondents.

The land was donated to the state by the United States, to provide the reclamation thereof, under the act of congress of September 28, 1850. By the state, the lands were donated to the counties in which they were respectively situated, in order to provide for their reclamation. R. S. 1879, sec. 6151. The funds arising from the sale of these swamp lands, primarily, were provided by the law, to be used for draining and reclaiming the land, and the county courts of the respective counties are authorized to have these lands drained and reclaimed with the proceeds of the sale of the lands. R. S. 1879, sec. 6152. The schools of the county have no interest in the lands, but have an interest in "the net proceeds of the sale of such lands, after defraying the expenses of draining, reclaiming, surveying and selling the same." R. S. 1879, sec. 6155. The word money, as used in section 6166 of the Revised Statutes of 1879, means the net proceeds mentioned in section 6155. It does not mean the whole proceeds.

BARCLAY, J.—By this suit plaintiff seeks to set aside a contract made in 1882 between the county court of Wayne county and the Cape Girardeau and Southwestern Railway Company in relation to a tract of swamp land.

The substance of the transaction is that the lands in dispute were to be sold to the company in consideration of the execution by it of a plan for reclaiming

them ( at an expense equal to $1.25 per acre of the lands) by the erection of a levee and drains across Mungo swamp to the St. Francois river in Wayne county. The form by which this result was reached embraced a sale of the lands to the company for the price of $1.25 per acre and an application of the proceeds to the reclamation of the lands in the mode indicated. The deed to the company was not to be delivered until the completion of the contemplated works by the latter under the direction of a commissioner representing the county.

The performance of this agreement plaintiff desires by this suit to prevent.

The circuit court upon final hearing found for defendants and dismissed the petition.

Plaintiff, after the usual motions and exceptions, appealed.

Assuming ( without deciding ), for the purposes of the case, the right of plaintiff to sue in the manner here adopted, we consider the substantial merits of the controversy.

Both parties concede that the tract in dispute forms part of the swamp lands granted to this state by virtue of the act of congress of September 28, 1850. The purpose of the grant, as expressed in it, was to enable the state to construct the necessary levees and drains to reclaim the swamps. It was provided expressly " that the proceeds of said lands, whether from sale or *by direct appropriation in kind*, shall be applied, exclusively, as far as necessary, to the purpose of reclaiming said lands by means of the levees and drains aforesaid."

Without undertaking a review of the state legislation which followed this grant, it will be sufficient for present purposes to remark that the " full title " to the lands here in litigation was ultimately vested by the state in Wayne county by an act approved November 4, 1857 ( Session Acts 1857, adj. sess., p. 32 ). This act

referred to the original grant by the United States and thereby clearly indicated that such value as these lands possessed was primarly applicable to restoring them to cultivation or other beneficial use. The county was clothed with the legal title as the public agency best adapted to fairly and intelligently execute the powers necessary to accomplish the object of the grant, the reclamation of the lands.

After the title thus vested in the county, the constitution of 1865 was adopted declaring that "the proceeds of all lands that have been, or hereafter may be granted by the United States to this state and not otherwise appropriated by this state or the United States," etc., should become part of the public school fund. Const. 1865, art. 9, sec. 5. This declaration is repeated in the present constitution. Const. 1875, art. 11, sec. 6.

As early as 1868 (if not at an earlier date, Sess. Acts, 1852, p. 108, Sess. Acts, 1855, p. 160) a provision of law, which had long governed many other counties (Sess. Acts, 1850, p. 239, sec. 6), became applicable to Wayne and other counties in southeastern Missouri, to the effect that the *net* proceeds of the sale of all such lands, after defraying the expenses of draining, reclaiming, surveying and selling the same, should become part of the school fund of the county. Sess. Acts, 1868, p. 70, sec. 8. That section has been continued in force and constitutes part of the existing law. R. S. 1879, sec. 6155. It recognizes the principle that the proceeds of those lands are first applicable to their reclamation, and that any surplus then remaining shall become part of the school fund. It effectuates the intention expressed in the act of Congress appropriating them for that purpose. The constitutional provision above quoted does not purport to make such lands or their proceeds a part of the school fund in disregard of all expense of their betterment. By its terms it does not apply to lands previously appropriated to a specific

State ex rel. Board of Ed. v. Wayne County Court.

purpose, as these have been both by the United States and this state. It certainly would not be intended that our state designed to ignore the trust upon which the original grant was made, unless such intent was clearly apparent. We assume, in the absence of a definite expression of opposite purpose, that the state respects, not repudiates the trust on which it received the lands. The same principle of construction leads us to consider the term "money," used in a later section of the law, ( R. S. 1879, sec. 6166) as referring to the net proceeds mentioned in the earlier section above discussed. If construed to mean gross proceeds it would nullify the force of the former section. That would be contrary to the maxim of interpretation that effect should be given to all parts of a law rather than that part should perish by construction. We hence conclude that it is within the power of the county court, as the administrative representative of the county, to contract for the sale of swamp land in consideration of its reclamation upon terms conforming to the other provisions of the law, and that the school fund is entitled to the surplus remaining after the necessary expenses of reclamation have been met.

In the present instance the company was required by the county court to expend, in building a levee and draining Mungo swamp, a sum amounting to the full price of the land at $1.25 per acre. This conformed to the requirement forbidding any sale of these lands at a less price than the rate just mentioned. R. S. 1879, sec. 6153.

There is no evidence in this record suggesting that the levee and plan of drainage projected by the company are other than honest and efficient means for the reclamation of these lands. There is nothing before us tending to show that the arrangement was a fraudulent device to, donate the lands to the company under the forms of law. That assertion appears in appellant's argument but we discover no testimony supporting it.

In the absence of evidence it will be assumed that public officers have proceeded in obedience to, not in disregard of their duties and obligations as such. The case of appellant in the trial court proceeded on the supposed want of power in the county court to sell the lands in question as was done and apply the proceeds cotemporaneously to draining and reclaiming them.

That is the only question presented for review. We resolve it as did the circuit court, whose judgment we all agree to affirm.