WILLIAM BROWN ESTATE COMPANY, *Appellant*, v. WAYNE COUNTY.

In Banc, June 25, 1894.

1. **Contract**: SWAMP LAND: RES JUDICATA. In an equitable suit by the state on the relation of the state board of education, to the use of the public schools of Wayne county against the county judges of that county, a railroad company, and one H., to annul a contract whereby the county agreed to convey to the railroad company all its swamp school lands in consideration of the company building levees to reclaim said lands and also the extension by the company of its road across the same and to restrain the delivery of a deed from the county to the company which was held by H. in escrow, relief was asked on the grounds that the lands were held by the county in trust for its public schools and that the contract was fraudulently made.

Wm. Brown Estate Co. v. Wayne Co.

The county was not made a party to the suit and on appeal the supreme court assumed merely, without deciding, that the contract was within the power of the county court to dispose of its swamp school lands for the purpose of reclaiming them and affirmed the judgment of the trial court on the ground that the evidence did not establish the fraud charged. *Held*, that such decision did not preclude the supreme court, in a subsequent suit directly involving the validity of the contract and in which all the parties thereto, including the county and H. were in court, from inquiring into the nature and character of the contract and holding that it was merely a donation of the lands to the railroad in consideration of building and operating its road in violation of the county's trust, and, therefore, void.

2. ——: ——: ——. In such subsequent action by the railroad company against Wayne county, its county judges and H. to enjoin the latter from delivering the deed held by him in escrow in which the validity of the contract was in issue, the supreme court decided that the county had no authority to make the contract and that the company was not entitled to the relief sought. *Held*, that such determination was decisive of an action by the heirs and successors of the assignee of the railroad company who obtained his interests prior to such first decision to compel Wayne county to convey the land to him.

*Appeal from Wayne Circuit Court.*

AFFIRMED.

*M. R. Smith* and *Wm. Carter* for appellant.

(1) Wayne county, by its contract, and performance thereof by the railway company, and by the acts and conduct of its officers relating to such contract and its performance, and to their inducing and encouraging the railway company to change its first and adopted route through that county, to a second and more difficult route, is, by reason of the aforesaid contract and its performance and the acts and conduct of its officers as aforesaid, estopped from claiming that such contract is invalid and void. Dillon on Mun. Corp. [4 Ed.], sec. 459, p. 533, and note 2; *Wayne County v.*

*Detroit*, 17 Mich. 390; 2 Herman on Estoppel, p. 1319; *United States v. Hodsen*, 10 Wall. 395; *Railroad v. Marion County*, 36 Mo. 305; *Union Depot Co. v. St. Louis*, 76 Mo. 393. (2) The decision rendered in the *State Board of Education case*, 98 Mo. 362 and 368, holding the contract made between the railway company and Wayne county to be valid and binding upon the defendant, Wayne county, was right and was the law, and was in harmony with the former opinions of the supreme court in the construction of that provision of the state constitution and swamp land laws involved in that case, and afterward involved in the *Hatten-Railway case*. *Long v. Long*, 79 Mo. 656; *Mills v. Railroad*, 107 U. S. 557; *Boon v. Bowers*, 30 Miss. 256; *Hollingshead v. Van Glahn*, 4 Minn. 190; *Butler v. Van Wyck*, 1 Hill, 459; *Hardigree v. Mitchens*, 51 Ala. 151; *Railroad v. Marion County*, 36 Mo. 305. (3) The contract being valid by the laws of the state at the time that plaintiff bought the land in question, and having been so held by the supreme court of the state, and the plaintiff relying upon the validity of the contract in purchasing the land, its validity and obligation can not be impaired by a decision of the same appellate court, by its altering its construction of the same provision of the state constitution and swamp land statutes that it construed when holding said contract as valid and binding. *Long v. Long*, 79 Mo. 656; *Ohio L. J. Co. v. Debolt*, 16 How. (U. S.) 432; *Taylor v. Ypsilanti*, 105 U. S. 71; *City v. Lamson*, 9 Wall. 485; *Olcott v. Supervisors*, 16 Wall. 678; *Douglass v. Pike County*, 101 U. S. 686; *Gelpcke v. Dubuque*, 1 Wall. 206; *State ex rel. v. Railroad*, 85 Mo. 282; *Fairfield v. Gallatin County*, 100 U. S. 47; *Burgess v. Seligman*, 107 U. S. 20; *Ray v. Gas Co.*, 20 Atl. Rep. 1067; *State ex rel. v. Miller*, 66 Mo. 342.

*Dinning & Byrns* with *John H. Raney* for respondent.

(1) The issues made in the board of education and the Wayne county case are not the same, nor are the parties the same. Judgments *in personam* conclude only parties to the record and their privies. Bigelow on Estoppel, sec. 59; *Quigley v. Bank,* 80 Mo. 290; *Lyons v. Murray,* 95 Mo. 23; *Henry v. Woods,* 77 Mo. 277. (2) The land in controversy is the absolute property of Wayne county, and it holds the same for the purposes designated in the law, and if sold, it must be done for the purposes and in the manner pointed out by the law concerning swamp lands. Nor had the said railway company power to make a contract to drain and reclaim swamp lands. Const. Mo. sec. 7, art. 12; *Land v. Coffman,* 50 Mo. 252; R. S. Mo. 1889, sec. 2543; R. S. 1879, sec. 765; *Pearce v. Railroad,* 21 Howard, 441; *Bank v. Mathews,* 98 U. S. 621; *Hitchcock v. Galveston,* 96 U. S. 341; *Police Jury v. Brittan,* 15 Wall. 566; *Mayor v. Ray,* 19 Wall. 468; Angell & Ames on Corp., sec. 256; *Thomas v. Railroad,* 101 U. S. 71. (3) The county court of Wayne county in disposing of this land, is but the agent of said county, with its powers limited and defined by law, and, when it steps outside, its acts are void; nor can the county be estopped from asserting the illegality of the acts of its agents in the premises. R. S. 1879, sec. 6154; *State ex rel. v. County Court,* 51 Mo. 84; *Sturgeon v. Hampton,* 88 Mo. 203; *State v. Bank,* 45 Mo. 528; Story on Agency, sec. 165; *Dennings v. Smith,* 2 Johns. Ch. 36; *Baltimore v. Reynolds,* 2 Md. 1; *State v. Hastings,* 10 Wis. 518; *Hull v. Marshall County,* 12 Iowa, 142; *Delafield v. State,* 26 Wend. 192; *Brady v. City,* 20 N. Y. 312; *People v. Bank,* 24 Wend. 431; *The Floyd Acceptances,* 7 Wall. 166; *Heidelberg v. St. Francois County,* 100 Mo. 69.

BRACE, J.—This is an appeal from the judgment of the circuit court of Wayne county sustaining a demurrer to the plaintiff's petition, the substance of which is as follows: That on the fourteenth of March, 1882, the said county of Wayne and the Cape Girardeau & Southwestern Railway Company entered into the following contract in writing and of record, to wit:

"Whereas the Cape Girardeau Southwestern Railway Company has this day bought all of the remaining and unsold swamp and overflowed lands belonging to Wayne county, State of Missouri, for the price and sum of $1.25 per acre, the total amount of acres of yet unsold land being in the aggregate, as near as can be ascertained, nine thousand, five hundred acres, and the aggregate price therefor $11,375.

"And, whereas the said county of Wayne has caused a patent or deed to be made and executed to the said Cape Girardeau Southwestern Railway Company for said swamp and overflowed land, but which said patent or deed has been placed in the hands of James F. Hatten as an escrow, and is to be delivered to said railway company when it shall have paid for said land, as in this contract hereinafter fully and particularly set out.

"And, whereas said railway proposes to do certain work, to drain, reclaim and protect said land from the overflows of the St. Francois and Castor rivers for the price and sum of $11,875, and which is a low charge for said work; and, whereas said proposed work will open up to settlement and cultivation a large portion of the southern part of this county, now practically of no value, and also promote the health of said county by a drainage of said lands: Now, therefore, in consideration of said premises, and other valuable considerations, this contract, entered into between the said county of Wayne by order of its county court, duly entered of

record at the February special term, or adjourned term, and the Cape Girardeau Southwestern Railway Co.

"Witnesseth, that the said county of Wayne agrees to pay said railway company the sum of $11,875, said sum being the price of nine thousand, five hundred acres of swamp land sold to said railway company at $1.25 an acre, and a deed or patent to which said lands has been made and executed by said county of Wayne this day and delivered to James F. Hatten as an escrow, and to be by him delivered to said railway company when said railway company shall have fully performed and done the work hereinafter to be specified, and which said deed or patent shall be in full and complete payment for, and on account of said work, without any other or further demand of payment for, or in that behalf; and said railway company expressly covenants that it will not make any reclamation against said county for any defect or imperfection of title hereby conveyed, or any part thereof. And said Cape Girardeau Southwestern Railway Company contracts, agrees and undertakes, in consideration of said sum of $11,875, so to be paid as aforesaid set out:

"1. To erect, build and maintain a levee from some point on the boundary line, on the east side of said Wayne county, and in township 27, to be selected by it, the said railway company, a levee or dam across that part of Wayne county, known as Mingo swamp, to the high land on the west side of said swamp, to such point on the opposite side as said railway company may deem best suited in that behalf—said levee so erected to have a top or crown of not less than twelve feet, and a base to be in proportion; and, further, said railway company agrees to open continuous ditches along said levee, along both sides, if necessary, to drain said land. It is, however, distinctly understood that the said railway company, if it shall deem it advisable, may

build trestle, or drive piling or build bridges, at any point or points along said levee, where it shall be deemed advisable by it to do so, and that the said county of Wayne will not object or except to the fact that the said levee is not, a complete earth embankment but on the other hand the said railway company expressly agrees to drain the surface water when necessary into said places where it may have erected said trestle work, piling or bridging. And it is distinctly understood that it is discretionary with said railway where it may wish to erect and maintain said trestle, piling or bridging.

"2.   Said railway company agrees that it will do said work within two years from the date of this contract, and also that within said time, in order to secure the permanency of such levee or work, it will build and operate upon said levee, so thrown up and built by it, a railway, and to extend said railway in a continuous line through said township 27, in Wayne county to some eligible point on the St. Francois river in said township.

"3.   And said railway company further agrees to cut down the timber on said line selected by it one hundred feet wide across said swamp to the county line.

"4.   And said railway company covenants that if it shall extend its line in a westerly direction, that it will so extend the same through township 27 in Wayne county.

"5.   And it is further agreed mutually by said parties that if the said railway company shall not, within two years from date, build said levee and extend its railway to the St. Francois river, in township 27, in order to secure its permanency across the same, that the said deed or patent, now in the hands of James F. Hatten as an escrow, shall be surrendered back to the said county court of Wayne to be by it canceled and for naught held.

"And, further, that the said railway company shall not be entitled to any compensation for any work it may have done or performed in and about the building of said levee of digging of said ditches as aforesaid, if it fails, neglects or omits to do said work, within the time aforesaid.

"6.   It is further understood that the building of said levee as aforesaid, and laying the iron over the same and through said township to any point in said township within one mile of the channel of said St. Francois river, shall be considered as having performed the contract on the part of said railway company, and that as soon as said levee is built and railway operated thereon, to secure its permanency to said St. Francois river, as in this article set out, that the said James F. Hatten shall at once, without further order, decree or act, deliver the said deed or patent to said railway company.

"7.   It is agreed by said railway company that the said work of building said levee, as in this contract set out, shall be done and performed under the direction of Wm. A. Penny, commissioner of Wayne county, but that the county shall not be liable to pay the compensation, or any compensation, to said Penny in that behalf.

"In witness whereof, this contract has been signed by Elijah J. Dalton, presiding judge of the county court of Wayne county, and countersigned by the clerk of said court, and has also been signed by the said Cape Girardeau Southwestern Railway Company, by Louis Houck, its president, this fourteenth day of March, A. D. 1882.

"[SEAL.]     ELIJAH J. DALTON,
               President County Court.
"SCHUYLER ANDREWS,
               County Clerk of Wayne Co., Mo.
"C. G. S. W. R'y Co.,
               By Louis Houck, President."

"That in pursuance of said contract the said county of Wayne executed its deed in proper form conveying all its unsold, swamp and overflowed lands particularly described therein to the said railway company and delivered the same to the said James F. Hatten to be held by him *in escrow* according to the terms of said contract. That said railway company being unable to perform the obligation of its said contract within the time therein specified, the time for the completion thereof was extended by the county court of said county from the fourteenth of March, 1884, to August 1, 1884. That, before said first day of August, 1884, the said railway company fully performed all the conditions upon its part of said contract, and completed said work which was thereupon approved and accepted by said county court. That in order to be able to perform said work the said railway company borrowed of one William F. Brown the sum of seventy-five thousand dollars under and in pursuance of the following written agreement entered into with him on the fourth day of December, 1882, to wit:

" 'This memorandum witnesseth, that Wm. Brown has agreed to furnish the Cape Girardeau Southwestern Railway Company the sum of $75,000 in cash to construct its road to the banks of the St. Francois river, from time to time, as said railway may need said sum— it being, however, understood that not more than $35,000 shall be demanded prior to March 1, 1883, and that the balance shall not be demanded prior to December 1, 1883; and in consequence of said sum of money being paid to said railway, said railway company agrees to deliver to said Wm. Brown its first mortgage bonds on the St. Francois river division of its road at eighty cents on the dollar; that is to say, $93,750 (dollars) in bonds for $75,000 in cash; and, further, $106,800 in paid up capital stock of said company; and, further, to

deed and to convey by good and sufficient deed of conveyance to said Wm. Brown the land known as the Wayne county land, being the land conveyed to said railway company by Wayne county, and the deed to which is now in the hands of J. F. Hatten as an escrow, to be delivered to said railway as soon as the said railway shall be constructed to within one mile of the banks of the St. Francois river, in township 27, in said county, as soon as the said railway shall be constructed and said deed is delivered. It is also understood that the interest coupons accruing on the bonds prior to March, 1884, and which may become due, may be paid by said railway company in bonds at eighty cents on the dollar, and that the said Brown will accept the same in payment of said interest. Also, that if any interest shall accrue on sums paid prior to the delivery of bonds, that the same shall be allowed and calculated and paid in the same way.

" 'Witnessed by B. F. Davis, dated December 4, 1882.

" '[Signed.]     C. G. S. RAILWAY Co.''
                              Per Louis Houck, Pres.
                    " 'WILLIAM BROWN.''

"That the plaintiff is a corporation duly incorporated under the laws of Missouri whose incorporators and stockholders consist solely of the heirs of said William Brown now deceased. That all the property left by the said William Brown at his death, real, mixed and personal, by descent, contract and transfer, became the property of the plaintiff in this action, and that said contract made by the said Brown with said railway company was duly assigned to plaintiff by all the parties in interest, by deed duly executed and recorded.

"That, at or about the time of the completion by said railway company of the work under said contract

with Wayne county, a suit in the nature of a bill in equity was instituted in the Wayne county circuit court by the state of Missouri at the relation of the state board of education to the use of the public schools of Wayne county, against the county court of Wayne county, the Cape Girardeau Southwestern railway company and the said James F. Hatten praying for a writ of injunction restraining the said Hatten from delivering to the said railway company the aforesaid deed so held by him *in escrow* and to require him to deliver said deed into court and further praying that said contract be set aside and held for naught, and to restrain the judges of said county court from approving and confirming the delivery of said deed to said railway company and for all such judgments, orders and decrees as the facts may warrant, to preserve to the said Wayne county and the public schools therein the said swamp and overflowed lands.''

The petition then sets out the pleadings in that case, and avers that upon the trial of said cause the circuit court of said county found the issues for the defendants therein and rendered judgment for them and dismissed the plaintiff's bill. That the plaintiff then appealed from that judgment to the supreme court which at the April term, 1889, thereof, affirmed the said judgment of said circuit court and thereby held that Wayne county had the right to dispose of its remaining unsold swamp lands to said railway company in the manner and for the purposes aforesaid. That plaintiff herein after the promulgation of the opinion of the supreme court in that case, and relying upon and placing full faith and credit in the principles of law therein enunciated, caused said railway company by its deed duly executed and acknowledged to convey to plaintiff herein the said swamp lands. That after the institution of the suit aforesaid, to wit, on the

twentieth of September, 1884, the said railway company instituted a suit in the circuit court of Wayne county against the said Hatten, the judges of the county court of said county and the clerk of said court to which suit said county afterwards became a party defendant, to restrain said Hatten from surrendering the said deed made by the said county of Wayne to said railway company and held *in escrow*, as aforesaid by the said Hatten, to said county court, and to enjoin said court from in any way changing or altering the records theretofore made touching the matter in controversy until a full hearing of the same could be had.

The petition then sets out the pleadings in that case, and avers that the *venue* of said cause was changed to the circuit court of Mississippi county in which court it was tried at the October term, 1887, thereof, the issues found for the defendants therein, and the plaintiff's bill therein dismissed, from which judgment the plaintiff therein appealed to the supreme court, by which court the judgment was at the October term, 1890, thereof affirmed, said court thereby holding that Wayne county had no authority or legal right to make the aforesaid contract with the said railway company disposing of its remaining unsold swamp lands as aforesaid. The petition then charges that the decision of the supreme court in the two cases aforesaid are in conflict. That the same matters and things were in issue in each. That as plaintiff has acted upon the faith of the first decision it is within the protection of the constitutional inhibition "that no state shall pass any law impairing the obligation of contracts," and that "no person shall be deprived of life, liberty or property without due process of law, and prays that the said county of Wayne be required to make its deed conveying said lands to the plaintiff, and for general relief."

1. The case of the state at the relation of the board of education to the use of the public schools of Wayne county against the judges of the county court of said county, James F. Hatten and the Cape Girardeau Southwestern railway company, in which the plaintiff sought to annul the contract between the county and the railway company and to enjoin the delivery of the deed for the swamp lands executed in pursuance thereof and held *in escrow* by the said Hatten, is reported in 98 Mo. at page 362, *et seq*. In that case it appears from the pleadings set out in the petition, the plaintiff based its right to the relief sought upon the ground that the swamp lands in question were held by the county of Wayne in trust for the public schools of said county, and that said contract was fraudulently and corruptly entered into by and between the judges of the county court and the officers of said company for the purpose of perverting the same to purposes and uses other than those of said trust. To that case the county was not a party. The rights and interests of the county in, and its power over, the land as trustee were considered only to the extent necessary to determine the rights and interests of the public schools therein, as a beneficiary of such trust, and we therein held that the proceeds of those lands are first applicable to their reclamation, and that only the surplus remaining after the payment of the expenses of draining, reclaiming, surveying and selling the same would become a part of the school fund, and "that it is within the power of the county court, as the administrative representative of the county, to contract for the sale of swamp land in consideration of its reclamation upon terms conforming to the other provisions of the law."

And, applying these principles to the case then in hand, we said: "There is no evidence in this record suggesting that the levee and plan of drainage projected

by the company are other than honest and efficient means for the reclamation of these lands. There is nothing before us tending to show that the arrangement was a fraudulent device to donate the land to the company under the forms of law. That assertion appears in appellant's argument, but we discover no testimony supporting it. In the absence of evidence it will be assumed that public officers have proceeded in obedience to, not in disregard of, their duties and obligations as such. The case of appellant in the trial court proceeded upon the supposed want of power in the county court to sell the lands in question as was done, and apply the proceeds contemporaneously to draining and reclaiming them. That is the only question presented for review. We resolve it as did the circuit court, whose judgment we all agree to affirm."

The chief contention in that case was, that, at the time the contract with the railway company was made, the county held all its unsold swamp lands in trust for the common schools, and, that upon a sale thereof all the proceeds became a part of the common school fund. To the discussion of that question the opinion is principally devoted, and, having demonstrated that the lands were not so held, but primarily for the purposes of reclamation, and that all the interest the common schools could have therein would be to such of the proceeds thereof as might be left after the payment of the expenses of such reclamation, an interest so remote and contingent as to be inappreciable; and, having decided that the county court might contract for the sale of the lands in consideration of their reclamation, in the absence of any evidence of fraud or bad faith by the parties who made the contract in question, and of one of the principal parties thereto, the county of Wayne, the trustee which was not a party to the suit, this court, without examining into or discussing the

intrinsic nature and character of that contract, sustained the judgment of the circuit court refusing to annul it.

This was probably as far as this court could have gone in that case; at least, it is as far as it did go. The most that can be said, is, that for the purposes of that case, it was assumed, not decided, that the contract in question was within the power of the county court to dispose of its swamp lands for the purpose of their reclamation. Consequently, when the case of the *Railway Company v. Hatton et al.*, reported in 102 Mo. 45, *et seq.*, in which the company sought, in effect, to sustain that contract, and in which all the parties thereto, including the county of Wayne, the trustee, were in court, and in which it was specially pleaded as a defense thereto "that the said county court of Wayne county and the said railway company had not capacity in law to make or enter into said contract, and that the same was outside and beyond the power of said county court and said company or its officers;" and it became necessary in determining such plea to inquire into the nature and character of the contract, we did not feel precluded from such inquiry by the decision in the former case, nor were we, as we then and now hold.

In this latter case, after maturely considering the issue, we held that the contract in question was merely a donation of lands to the company in consideration of building and operating its road, and not a contract for the sale of lands for the purpose of their reclamation, consequently the county court had no power in law to make the contract, and ruled that plaintiff was not entitled to the relief sought. That case is decisive of the one in hand. Brown took his contract from the railway company with full notice of the contract between the county and the company; in

fact, that contract was made a part of his own contract. It appears from the allegations of the petition, that while the two suits aforesaid were pending and undetermined, Brown died, and the heirs and distributees of his estate formed the plaintiff corporation herein for the purpose of managing the estate descended to them, to which they transferred all their interest therein, including this contract. The plaintiff simply stands in Brown's shoes, with the same rights and interests that Brown would have had if living and he had brought this suit.

The only thing that seems to have been done after the promulgation of the opinion in the school board case was the execution of a deed by the railway company to the plaintiff for the lands in pursuance of the contract. This in no way changed plaintiff's relation to the contract, the validity of which was subject to the final determination of this court. Even if the plaintiff's contention could be sustained, that the decision in the school case was decisive of the validity of the contract, it does not appear that the plaintiff has invested a dollar upon the faith of that decision, or that it is in a position to invoke the protection of the constitutional inhibition cited in the petition, as against the subsequent decision that was unquestionably decisive of that question.

The judgment of the circuit court is affirmed. All concur.